E-FILED
Monday, 04 June, 2007  02:42:53 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| Annestra Taylor-Doyle, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-1048 |
| | ) | |
| David Poehls et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on two motions to dismiss, one by Defendants City of Peoria, Michael McCoy, and Stephen Smith (d/e 4), and the other by Defendant Jennifer Steitmatter (d/e 11).   For the reasons below, the Court recommends both motions be denied.

### Standard

Both motions to dismiss are brought under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  In deciding a 12(b)(6) motion, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the

plaintiff.  Patel v. City of Chicago, 383 F.3d 569, 572 (7th Cir. 2004).  "'A

complaint under Rule 8 limns the claim; details of both fact and law come

later, in other documents.  The question is "whether relief is possible under

any set of facts that could be established consistent with the allegations...'"

McDonald v. Household Int'l, Inc., 425 F.3d 424, 428 (7th Cir. 2005).

Supplemental state law claims are tested by the same federal notice

pleading standard, even if state courts apply a fact-pleading standard.

Christensen v. County of Boone, 483 F.3d 454, 466 (2007).

### Allegations

Only the allegations relevant to the motions to dismiss are set forth

here.

Plaintiff is a registered nurse.  At times relevant and for eight years

prior, she worked for Children's Home of Illinois, Inc. ("Children's Home"),

caring for handicapped children.  Her daughter attended Peoria Richwoods

High School as a freshman.

Defendant Poehls, the Dean of Students of Peoria Richwoods High

School, falsely reported to the Illinois Department of Children and Family

Services ("DCFS"), and to Peoria Police Department Officers Nelson and

Gould, that Plaintiff was abusing her daughter.

Officer Nelson arrested Plaintiff on March 21, 2006, at 1:50 p.m., even though Plaintiff's daughter had recanted her accusations against Plaintiff.  Plaintiff was detained at Peoria County Jail on criminal charges of endangering the welfare of and domestic battery on a child, though no probable cause existed for those charges.  She was taken to Peoria County Jail on Tuesday, March 21, 2006, at 3:20 p.m. and booked on those charges.

Plaintiff spent Tuesday and Wednesday night in Jail, as well as Thursday morning, though a judge was conducting detention and bail hearings on Wednesday during the day and on Thursday morning.  On Thursday afternoon between 1:00 and 2:00 p.m., Plaintiff was released without a hearing and with no bond requirement.[1]  No criminal charges were filed against Plaintiff by the Peoria County State's Attorney.

However, on or after March 2, 2006, despite knowing the abuse accusations were false, Defendant Sizemore, a DCFS investigator, caused an "indicated report" to be filed in DCFS records, meaning that a finding of

---

[1]The Court takes Plaintiff's allegations as true as to the time she was released and does not consider the documents attached to the motion to dismiss by Defendant Mcoy et al., which shows she was released Thursday morning.  Fed. R. Civ. P. 12(b)(court cannot consider matters outside pleading on motion to dismiss unless the court converts the motion into a summary judgment motion).  In any event, the time difference would not change the court's recommendation.

child abuse and neglect had been indicated against Plaintiff.  A DCFS indicated report is of public record, available for all to view, including employers.  Additionally, on June 15, 2006, Defendant Sizemore filed three petitions for neglect against Plaintiff, seeking to compel her compliance with a "safety plan" for her children.

At work, Plaintiff told her supervisor and Defendant Steitmatter, the director of human resources, about the false accusations and the baseless petitions against her.  The President of Children's Home responded in April, 2006, by putting Plaintiff in the position of Director of Nursing, with the restriction that she not approach children alone.

In October, 2006, the Peoria County State's Attorney obtained dismissal of the neglect petitions.  Plaintiff informed Defendant Steitmatter of the dismissals.  At that point, the only action remaining to clear Plaintiff's name was a pending administrative hearing to remove the DCFS indicated report.

On November 14, 2006, though Defendant Steitmatter knew no criminal charges had been filed, that the DCFS petitions had been dismissed, and that a hearing to remove the indicated report was pending,

Steitmatter told Plaintiff that she was terminated, in part because of the indicated report on file.

While Plaintiff had acted as Director of Nursing, before her termination, she "had refused to carry out directions that nurses alter the physician's dictation and non-nursing personnel directing patient care by nursing because they were as contrary to her nursing obligations imposed by law which plaintiff as a Registered Nurse had a duty to follow." (Complaint ¶ 60).

## Analysis

## I.      Fourth Amendment Claim Against Smith, McCoy and Peoria County

Defendants Smith, McCoy and Peoria County move to dismiss on the grounds that Plaintiff fails to state a claim because her detention was less than 48 hours.

In a warrantless arrest, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."  Pugh v. Gerstein, 429 U.S. 103, 113 (1975). "[J]udicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991).  However, "[a]

lesser delay might still be unconstitutional 'if the arrested individual can prove that his or her probable cause determination was delayed unreasonably.'" Lopez v. City of Chicago, 464 F.3d 711, 722 (7th Cir. 2006), *quoting* McLauglin; Chortek v. City of Milwaukee, 356 F.3d 740, 746 (7th Cir. 2004)("the [Supreme] Court notes in *County of Riverside* that unreasonable delays, even within the forty-eight hour period, may be constitutionally troublesome.").  "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake."  McLauglin, 500 U.S. at 56.

A reasonable inferences arises from Plaintiff's allegations that she was detained for an unreasonably long time, even if her release was shy of the 48 hours.  She alleges that, despite a judge's availability on the Wednesday following her arrest as well as on Thursday morning, she was intentionally not taken before the judge.  Defendants offer no explanation for Plaintiff's continued detention despite the availability of a judge for a probable cause and bond hearing.  Even if Defendants did offer an explanation, the determination would not be appropriate at the motion to dismiss stage, in light of the allegations.  The Court will therefore

recommend that the motion to dismiss by Defendants Smith, McCoy and Peoria County be denied.

## II.  Supplemental State Claim Against Defendant Steitmatter

The Complaint's "state claims" section states that Defendant Steitmatter's conduct "in terminating plaintiff's contract without justification is an intentional interference with plaintiff's contract with the Children's Home of Illinois, Inc., for which the defendant is liable."  (Complaint ¶ 83). Plaintiff seems to imply that Steitmatter's proffered reason for termination (the indicated report) was pretextual and that the real reason behind Plaintiff's termination was Plaintiff's refusal to follow orders that would have violated her legal and professional obligations as a nurse.  (Complaint ¶ 58-61; d/e 19, p. 14-15).[2]  Plaintiff contends that:

> [t]he complaint places Steitmatter on notice that Plaintiff is claiming Steitmatter interfered without justification with her terminable at will contract with the corporation and prospective business relationship of continued employment with the corporation.  It is not beyond doubt that plaintiff can not prove a state of the world consistent with these allegations in which she can recover for interference with prospective business advantage from Steitmatter.   (d/e 19, p. 8).

---

[2]Plaintiff does not assert a retaliatory discharge claim.  See Fellhauer v. City of Geneva, 142 Ill.2d 495, 505, 568 N.E.2d 870, 875 (1991).

Plaintiff also argues that corporate privilege is an affirmative defense that she is not required to negate in her Complaint.  (d/e 19, p. 6).

Plaintiff appears to concede that she was an at-will employee and that the tort claim she is pursuing is intentional interference with prospective economic advantage, rather than intentional interference with a written contract. (d/e 19, p. 7).  The court therefore addresses only the former claim.[3]

> To state a cause of action for intentional interference with prospective economic advantage, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.

Anderson v. Vanden Dorpel, 172 Ill.2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996), *citing* Fellhauer v. City of Geneva, 142 Ill.2d 495, 511, 568 N.E.2d 870 (1991).

The first, second and fourth elements are clearly alleged in the Complaint.  Plaintiff alleges a valid business expectancy arising from her

---

[3] In any event, the analysis would substantively identical for an intentional interference with contract claim–the only difference being the source of the expectation for continued employment.  *See* Chapman v. Crown Glass Corp., 197 Ill.App.3d 995, 1005, 557 N.E.2d 256, 262 (1st Dist. 1990)(torts are "closely allied").

eight years of working at Children's Home, even though she was an at-will employee.  (d/e 19, p.7); *see* Fellhauer, 142 Ill.2d at 512, 568 N.E.2d at 878 ("This court nevertheless has long recognized a legitimate expectancy in an employment relationship."); Ali, 481 F.3d at 945 ("[w]hen a third party maliciously sticks his nose into the economic relationship between an employee and an employer and causes the employee to lose her job, that third party is subject to the tort cause of action even if the employment was at-will.").  Defendant Steitmatter's knowledge of that expectancy can be inferred from her position as director of human resources, and damages can be inferred from Plaintiff's termination.

The more difficult part of the analysis is the third element–intentional and unjustified interference by Defendant Steitmatter.  The analysis is complicated by Steitmatter's position as human resources director of Children's Home.  An intentional interference claim cannot be maintained against Steitmatter for actions taken in her capacity as human resources director of Children's Home, in furtherance of her duties in that position. Steitmatter effectively *is* Children's Home when she acts in that capacity on behalf of Children's Home; she is not a "third party" and therefore cannot be sued for intentionally interfering in the employment relationship between

Children's Home and Plaintiff.  Ali v. Shaw, 481 F.3d 942, 945-46 (7th Cir.

2007)(reading *Fellhauer* and other Illinois cases as imposing third party

requirement on tortious interference claim).

Relatedly, Steitmatter enjoys a conditional privilege for actions taken

in her corporate capacity on behalf of Children's.  Corporate officers

"act[ing] on behalf of a corporation in accordance with their business

judgment" are not liable for tortious interference.  Ali, 481 F.3d at 945 ("In

the corporate world, officers enjoy immunity from these types of claims

provided that they took the action in pursuit of the legitimate interests of the

company."); Stafford v. Puro, 63 F.3d 1436, 1442 (7th Cir. 1995); George A.

Fuller Co. v. Chicago College of Osteopathic Medicine, 719 F.2d 1326,

1333 (7th Cir. 1983)("Corporate officers are not outsiders intermeddling

maliciously in the business affairs of the corporation."); Cress v. Recreation

Services, Inc., 341 Ill.App.3d 149, 175, 795 N.E.2d 817, 843 (2d Dist.

2003).

This protection falls away if Steitmatter acted outside the scope of her

corporate authority in pursuit of her own personal goals or for the sole

purpose of harming Plaintiff.  Vickers v. Abbott Laboratories, 308 Ill.App.3d

393, 411, 719 N.E.2d 1101, 1116 (1st Dist. 1999)(recognizing that

corporate officer may be sued if actions "unjustified and malicious", solely for own gain, but finding no evidence of improper motive).  In that event, Steitmatter's interference would be "unjustified" and the third-party requirement would not present a barrier, because Steitmatter would not be viewed as synonymous with Children's Home.  *See* Ali, 481 F.3d at 946 (appearing to recognize that a corporate officer's "malicious" actions could obviate privilege, but finding no evidence thereof); George A. Fuller Co., 719 F.2d at 1333 (privilege does not apply to actions beyond corporate authority in furtherance of personal goals or for purpose of harm); Cress v. Recreation Services, Inc., 341 Ill.App.3d 149,  795 N.E.2d 817, 844 (2d Dist. 2003)("the question of whether a corporate officer is identical with a corporation for purposes of tortious interference with contract is the same question as whether the officer acted within the qualified privilege in inducing the breach of the contract between the plaintiff and the officer's corporation.").

Plaintiff alleges "unjustified interference," but the phrase requires more than unjust, unwarranted, or unfair in the context of an intentional interference tort.  "Unjustified interference," sometimes described by courts as "malicious," means an action taken for the sole purpose of furthering

one's own personal interests or out of a desire to  harm the plaintiff.  The

cases cited by Plaintiff, and those found by the Court, which allow an

interference claim to proceed against a corporate officer all involved these

kinds of claims.[4]

Plaintiff does not allege that Steitmatter's "unjustified interference"

was in furtherance of Steitmatter's personal goals or out of a desire to harm

Plaintiff.  However, "Rule 8 does not require plaintiff to plead the 'elements'

of legal theories, or facts corresponding to each element." Christensen v.

County of Boone, 483 F.3d 454, 466 (7th Cir. 2007).  The Seventh Circuit

recently and strongly affirmed this principle in Vincent v.

---

[4]*See, e.g.,*  Adams v. Catrambone, 359 F.3d 858, 865-66 (7th Cir. 2004)(no
corporate privilege where plaintiff alleged "interference was designed to cover up the
defendant's theft of corporate assets"); Stafford v. Puro, 63 F.3d 1436 (7th Cir.
1995)(unlawful violation of Wage Act); George A. Fuller Co., 719 F.2d at 1333 (affirming
12(b)(6) dismissal of interference claim where alleged facts did not indicate actions
were taken out of personal motive and contrary to corporate interests); Mittelman v.
Witous, 135 Ill.2d 220, 552 N.E.2d 973 (1989)(false statements about law firm associate
in order to preserve own reputation), *abrogated on other grounds by* Kuwik v. Starmark
Star Mktg. & Admin., Inc., 156 Ill.2d 16 (1993); Cress v. Recreation Services, Inc., 341
Ill.App.3d 149,  795 N.E.2d 817, 844 (2d Dist. 2003)(jury could find that Defendant fired
plaintiff "for no credible reason other than to harm plaintiff); Chapman v. Crown Glass
Corp., 197 Ill.App.3d 995, 557 N.E.2d 256 (1st Dist. 1990)(scheme to force owner to sell
out interest at low cost for Defendant's own personal benefit); Castro v. Total Home
Health, Inc., 2004 WL 1588261 * 5 (N.D. Ill. 2004)(not reported in F.Supp.2d)(false
statements of sexual harassment to EEOC).

City Colleges of Chicago, — F.3d —, 2007 WL 1238745 *3 (7th Cir. 2007):
"the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must
allege fact Y at the outset.'"

While Plaintiff does not allege that Steitmatter acted in her own
interest or to hurt Plaintiff, the court cannot rule out the *absence* of such
improper motive by Steitmatter.  Plaintiff may be able to prove that
Steitmatter actions were based on such improper motive, which would not
be inconsistent with or contradict any of  the allegations in the Complaint.
Accordingly, the question is one of factual merit, not whether a legal basis
exists for the claim, a question that must be answered on summary
judgment or at trial.  The Court will therefore recommend that Steitmatter's
motion to dismiss be denied.

WHEREFORE, the Court RECOMMENDS the denial of both the
Motion to Dismiss by Defendants Smith, McCoy and Peoria County (d/e 4)
and the Motion to Dismiss by Defendant Steitmatter (d/e 11).

Any objections to this Report and Recommendation must be filed in
writing with the Clerk of the Court within ten working days after service of a
copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1).
Failure to timely object will constitute a waiver of objections on appeal.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.

     ENTER:    June 4, 2007

                           s/ Byron G. Cudmore

                         _____

                              BYRON G. CUDMORE
                  UNITED STATES MAGISTRATE JUDGE