E-FILED
Wednesday, 03 February, 2010 09:13:23 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANNESTRA TAYLOR-DOYLE, et al., )
)
      Plaintiffs, )
)
v. ) Case No. 07-1048
)
DAVID POEHLS, et. al., )
)
      Defendants. )

## ORDER

This matter is now before the Court on Defendants David Poehls' ("Poehls") and Peoria School District 150's ("District 150") Motion for Summary Judgment. For the reasons set forth below, the Motion [#89] is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(4), as the claims arise under the Civil Rights Act of 1871, 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367.

## FACTUAL BACKGROUND

This § 1983 action arises out of the events following the discipline of Plaintiff's ("Taylor-Doyle") daughter, S.T., by Richwoods High School Dean Poehls. On February 14, 2006, S.T. had sexual intercourse with a male student in a bathroom at Richwoods High School. After Poehls heard rumors about the encounter, he interviewed the male student, who admitted to Poehls that the incident occurred. Plaintiff was informed of the encounter by K.D., one of her foster children, on or about February 21, 2006. When Plaintiff questioned S.T. about the incident, S.T. admitted that the incident occurred following a mandatory in-school suspension

both students served. Taylor-Doyle then called Poehls the next day. Poehls was authorized, as Dean of Students, to suspend a student for between one and ten days, determining the appropriate number of days for the suspension at his discretion. After receiving admissions from both students involved, Poehls issued both S.T. and the male student a five-day suspension.

Because S.T. committed an expellable offense, District 150 policy required that Poehls either offer S.T. entry into the Alternative Probation Program or refer her to the Director of Student Affairs for consideration of expulsion upon the completion of her suspension. Alternative probation is not mandatory and is offered when a reasonable expectation exists that a student who committed an expellable offense will successfully complete his or her education. Upon completion of the program, records indicating that a student was enrolled in the program are expunged. On March 2, 2006, Plaintiff, Annestra Taylor-Doyle ("Taylor-Doyle") met with Poehls to discuss alternative probation for S.T. During the meeting, Poehls explained the program, and both S.T. and Taylor-Doyle agreed to sign the Alternative Probation Agreement.

The exact statements uttered by Taylor-Doyle at this meeting are in dispute and greatly muddled by Plaintiff's inconsistent deposition testimony. However, Taylor-Doyle admits that she used profanities during the meeting, and both parties agree that she directed the phrase "your ass" toward S.T. during the meeting. (Pl.'s Dep 60: 5-15; Poehls Dep. 71: 22-24.) Poehls noticed that S.T. appeared "very upset" and had "a very shaken look about her". (Poehls Dep. 78: 12-18.) After the meeting ended and Plaintiff departed from his office, Poehls asked S.T. if Taylor-Doyle ever abused her. S.T. answered affirmatively and specifically stated that Plaintiff hit her in the head with a boot and dunked her head in dishwater. Upon hearing S.T.'s statements, Poehls called school counselor Deborah Kelone into his office and S.T. repeated the statements to

2

Kelone in Poehls' presence. Additionally, both Poehls and Kelone noticed marks on S.T.'s forehead and neck.

Poehls then alerted the campus police officer of S.T.'s allegations of abuse and called the Illinois Department of Children and Family Services ("DCFS") suspected abuse hotline. Poehls' involvement with this matter ended when he completed a DCFS suspected abuse report and was interviewed by Steven Sizemore ("Sizemore"), the DCFS investigator assigned to probe S.T.'s claims. Peoria Police Detective David Nelson ("Nelson") was notified of the situation and worked with Sizemore to conduct an official investigation into S.T.'s allegations. After Taylor-Doyle was arrested for domestic battery and endangering the life and welfare of a child, her husband, Gary Doyle, agreed to a DCFS child safety plan that restricted Taylor-Doyle's access to the children and required that the children reside outside of Taylor-Doyle's home. Gary Doyle renewed this plan weekly until April 24, 2006, on or about the day that the charges against Taylor-Doyle were dropped. After previously indicating Taylor-Doyle, DCFS voluntarily unfounded the child abuse indicated finding and dismissed the administrative proceeding on January 11, 2007.

On March 2, 2007, Plaintiffs, Annestra Taylor-Doyle, individually, and as mother and next friend of S.T. and L.T., commenced this action against Poehls and District 150; Nelson and the City of Peoria, IL; Sizemore; Michael McCoy, Sheriff of Peoria County; Stephen Smith, Jail Superintendant of Sheriff of Peoria County; Peoria County, Illinois; and Jennifer Streitmatter, Director of Human Services for the Children's Home. Defendants McCoy, Smith, Streitmatter, and Peoria County have all been subsequently dismissed from this matter with prejudice. Also dismissed with prejudice was Plaintiff S.T. Remaining are Plaintiff's various constitutional and state law claims against Defendants Poehls and District 150, Nelson and the City of Peoria, and

3

Sizemore. On July 10, 2009, Defendant Poehls filed the instant Motion. This matter is now fully briefed, and this Order follows.

## STANDARD OF REVIEW

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate, through portions of the record or affidavits, the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all references drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). The Court will deny summary judgment if a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

**DISCUSSION**

In order to state a claim for relief under § 1983, the plaintiff must allege the deprivation of a right secured by the Constitution or laws of the United States by a person acting under color of state law. Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004) (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)). The first inquiry in any § 1983 suit is whether the plaintiff was deprived of a right secured by the Constitution or laws of the United States. Baker v. McCollam, 443, US 137, 140 (1979). Taylor-Doyle asserts that Defendant Poehls violated her Fourth Amendment rights against unreasonable searches and seizures, Fourteenth Amendment substantive due process rights and First Amendment free speech rights.

**I. Fourth Amendment**

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures". U.S. Const. Amend. IV. Plaintiff admitted that Poehls did not seize Taylor-Doyle. (Pl.'s Br. 17). However, Taylor-Doyle seeks to maintain a Fourth Amendment claim on behalf of S.T., who was dismissed with prejudice as a plaintiff to this litigation pursuant to a written stipulation. Because S.T. is no longer a party to this case and "Fourth Amendment rights are personal rights which… may not be vicariously asserted," Plaintiff lacks standing to bring a claim on S.T.'s behalf. Henning v. O'Leary, 477 F.3d 492, 495 (7th Cir. 2007) (quoting Rakas v. Illinois, 439 U.S. 128, 133-34 (1978)). Since Taylor-Doyle does not assert a violation of her own Fourth Amendment rights and her child, S.T. is no longer a party to this litigation, summary judgment on the Fourth Amendment claim is granted.

## II. First Amendment

A prima facie case of First Amendment retaliation requires the Plaintiff to establish: (1) she engaged in activity protected by the First Amendment, (2) the deprivation she suffered would likely deter future First Amendment activity, and (3) the protected activity was "at least a motivating factor" in the Defendant's decision to retaliate. Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir. 2008) (quoting Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006)).

Taylor Doyle asserts that Poehls retaliated against her as a result of her decision to exercise her First Amendment right to protest the alternative probation arrangement to which she earlier agreed. Taylor-Doyle claims, in her response to Defendant's Motion for Summary Judgment, that she "strongly protested Dean Poehl's insistence that she sign the Alternative Probation Agreement." (Pl. Resp. 27.) However, Taylor-Doyle's sworn testimony explicitly contradicts this assertion. Plaintiff testified that she never read the Alternative Probation Agreement and doesn't recall the specifics of the conversation that occurred in Dean Poehls' office when the APA was explained to her. (Taylor-Doyle Dep. 62: 11-17.) She remembered stating that she was "damned if I do and damned if I don't," but admits that Poehls did not threaten her. (*Id* at 59:2-4; 60: 23-24.)

More importantly for this inquiry, however, is Taylor-Doyle's testimony that she did not take any steps to protest the APA. She testified that after she signed the APA, she never called the dean, never attended any school board meetings, and never called the principal of Richwoods to protest or express disagreement with the APA, despite the fact that she felt as though she could take these measures. (*Id* at 63: 13- 64:22.) Additionally, Taylor-Doyle testified that no one stopped her from taking these steps to challenge the APA. *Id.* By Plaintiff's own admission, she did not parlay her belief that she was "damned if [she does] or damned if [she doesn't]" into any

6

action which challenged the alternative probation policy and/or its application to S.T. Plaintiff does not attempt to address how this statement functioned as a "motivating factor" in Poehls decision to report S.T.'s allegations to DCFS. Although Plaintiff stated her opinion of the APA, there is absolutely no evidence that this statement motivated Poehls in any way.

Plaintiff also claims that her "strong statements" to S.T. during the meeting in Poehls' office are also motivating factors for Poehls' retaliation. Plaintiff admits using profanity while speaking to S.T. during the meeting in Poehls' office. (Taylor-Doyle Dep. at 60.) However, Plaintiff does not address how a statement directed toward her daughter could motivate *Poehls* to retaliate. These statements were not directed toward Poehls, and Plaintiff even admits that "Poehls did not know anything about Taylor-Doyle or [S.T.]" during the time in question (Pl.'s Br. 28.) In short, the record does not indicate that Poehls had any personal basis for retaliating against Plaintiff. Additionally, Plaintiff testified that she did not protest the APA with Poehls' superiors or the District 150 school board; thus, her exercise of free speech did not threaten Poehls' job security in any way. In sum, Poehls also had no professional basis for retaliating against Plaintiff.

Finally, neither party disputes that Illinois law required Poehls to file a DCFS report if he had reasonable cause to believe a child may have been abused or neglected. Poehls believed that S.T.'s accusation was credible and that he was mandated by Illinois law to report S.T.'s accusations. (Poehls Dep at 79:6-8; 127:17-24.) Even assuming, *arguendo*, that Poehls' suspicion was not actually reasonable, that the fact that Poehls *believed* himself to be a mandated reporter sheds light on his motivation for acting. However, Plaintiff offers no plausible argument indicating that retaliation, as opposed to perceived legal responsibility, was the motivation for

7

Poehls' actions. There is simply no evidence in the record to suggest that Poehls' actions were retaliatory in any way. Summary judgment on this issue is granted in favor of the Defendant.

### III. Fourteenth Amendment

Taylor-Doyle also alleges that Poehls interfered with her right to familial relations under the Fourteenth Amendment. It is well established that"[t]he interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized" in American jurisprudence. Troxel v. Granville, 530 U.S. 57, 65 (2000); *see also* Meyer v. Nebraska, 262 U.S. 390, 399 (1923). However, the right to familial relations is not absolute. Doe v. Heck, 327 F.3d 492, 520 (7th Cir. 2003). In order to determine whether an individual's right to familial relations has been violated by a government actor, courts must perform a balancing test "between the fundamental right to the family unit and the state's interest in protecting children from abuse". Brokaw v. Mercer County, 235 F.3d 1000, 1019 (7th Cir. 2000). The standard is whether the state has "some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse". *Id* at 1019.

Taylor-Doyle asserts that Poehls had no articulable evidence to support a reasonable suspicion that S.T. was abused. However, the undisputed facts reveal an entirely reasonable basis which justifies Poehls' suspicion. Taylor-Doyle remembers telling S.T. in Poehls' office that "You will be called a slut and a ho, but you cannot fight or it is your ass". (Taylor-Doyle Dep. at 60.) Her recollection is supported by her husband, Gary Doyle. Plaintiff testified that she was wearing a Bluetooth headset during the meeting with Poehls and had Mr. Doyle on the line so he could hear the conversation. (*Id*. at 51-53.) According to Mr. Doyle's testimony, which was undisputed by Plaintiff, Taylor-Doyle's voice was raised during the meeting and she was upset.

(Doyle Dep. at 59-60). Mr. Doyle remembers Plaintiff using the phrase "it will be your ass" while Plaintiff was warning S.T. against getting into further trouble. (*Id*. at 58: 145-46). The Doyles' recollection is contradicted by the account given in the incident report submitted by Poehls on March 14, 2006. In the report, Poehls records Plaintiff's statement as "this won't happen again – I'll kick your ass – you will be fucked up". (Defs.' Br. Ex. L.) However, even though the parties disagree on the entirety of the statement, Plaintiff has conceded that she was upset during the meeting and told S.T. "you cannot fight or it is your ass" in a raised voice. A reasonable person observing this exchange would undoubtedly believe it to be a threat of, at the very least, future discipline. Poehls, however, did not call DCFS based upon this information alone. Poehls' testified that after Taylor-Doyle exited his office, S.T. appeared shaken and upset. (Poehls Dep. 78.) When Poehls asked S.T. if she had been abused by Taylor-Doyle and S.T. stated that she had been physically abused by Taylor-Doyle. Following this statement, Poehls asked Debbie Kelone, S.T.'s counselor to come over to his office, and S.T. repeated two specific allegations that Taylor-Doyle hit her in the head with a boot and held her head under dishwater after Poehls called their home to inform Taylor-Doyle of S.T.'s suspension. Finally, both Poehls and Kelone testified that S.T. had visible marks on her forehead and neck.

 A reasonable person, when presented with the above information, would suspect that S.T. had been or was in imminent danger of being abused. Whether or not S.T. *was actually* abused is of no importance to this inquiry. Instead, the undisputed facts, even when construed in the light most favorable to the Plaintiff, show that Poehls observed a parent swear at her daughter in a raised voice, followed by the daughter's fearful reaction and discussion of specific incidents of physical abuse at the hands of the mother. After hearing the daughter give a detailed account to consistent with her initial statements and observing marks on S.T.'s body (specifically, her head

9

and neck) which corresponded with the locations of the alleged abuse, Poehls behaved as any reasonable person would: he notified the police and called DCFS.

Taylor-Doyle argues that Poehls violated her substantive due process right to family integrity by fabricating evidence of child abuse and reporting false accusations of child abuse. According to Taylor-Doyle, Poehls' improperly suggested to S.T. that she implicate Taylor-Doyle for child abuse. In support of that assertion, Plaintiff states that S.T. had attention deficit/hyperactivity disorder, problems submitting to her mother's authority, and "difficulties in resisting suggestion". (Pl.'s Br. 27.) These facts, however, have absolutely no probative value relating to Plaintiff's claim that Poehls, during the specific timeframe in question, falsified evidence or improperly influenced S.T.'s accusatory statements. Plaintiff has no evidence whatsoever that Poehls improperly influenced S.T. in any way. The record contains no testimony by S.T., or any other witness, indicating that Poehls influenced S.T.'s statements, no documentary evidence implicating Poehls, and no evidence whatsoever that Poehls had a motive or reason to improperly influence S.T. Although Taylor-Doyle testified that S.T. had personal difficulties, Plaintiff cannot show that Poehls had any knowledge of the aforementioned issues nor that Poehls acted improperly to influence S.T.'s statements.

Plaintiff also points to S.T.'s recantation of her accusation as circumstantial evidence of Poehls' influence on S.T.'s statements implicating Taylor-Doyle. However, the record clearly renders this tenuous argument unavailing. The undisputed facts show that S.T. recanted her accusation *after* Poehls' involvement in this issue ended. S.T. was not deposed as a witness in this matter, and Taylor-Doyle does not assert that S.T., at any time after leaving Poehls' office, implicates Poehls as an influence on her initial statements. Taylor-Doyle has simply presented no evidence of improper suggestions made by Poehls to S.T. in his office. As a result, Taylor-

Doyle presents no factual basis upon which a reasonable fact finder could conclude that Poehls' initial suspicions were not reasonable and based on definite, articulable evidence. Therefore, summary judgment on Plaintiff's Fourteenth Amendment claim is granted in favor of the Defendant.

**IV. Qualified Immunity for § 1983 Claims**

Poehls also moves for summary judgment on the issue of qualified immunity for Plaintiff's § 1983 claims. Under the doctrine of qualified immunity, public officials are shielded from individual liability in § 1983 lawsuits arising out of actions taken while performing discretionary functions. Brokaw, 235 F.3d at 1022 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Public officials will not be granted qualified immunity when "their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*.; *See also* Darryl H. v. Coler, 801 F.2d 893, 907 (7th Cir.1986). The first inquiry before the Court is whether a constitutional violation has occurred. The next consideration involves whether, at the time of the violation, the public official's conduct violated a constitutional right that "was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue." Brokaw, 235 F.3d at 1022 ("[B]inding precedent is not necessary to clearly establish a right.") (Citation omitted).

Even assuming, *arguendo*, that Poehls actions somehow violated Plaintiff's constitutional rights, Poehls is entitled to qualified immunity. Under the totality of the circumstances, the Court cannot conclude that Poehls' conduct was so plainly egregious that Poehls knew or should have known that he was violating Taylor-Doyle's constitutional rights. As will be discussed below, Poehls, an administrator at Richwoods High School at the time, was a mandated reporter of suspected child abuse claims. A reasonable person would not have known, or even suspected,

Doyle presents no factual basis upon which a reasonable fact finder could conclude that Poehls' initial suspicions were not reasonable and based on definite, articulable evidence. Therefore, summary judgment on Plaintiff's Fourteenth Amendment claim is granted in favor of the Defendant.

**IV. Qualified Immunity for § 1983 Claims**

Poehls also moves for summary judgment on the issue of qualified immunity for Plaintiff's § 1983 claims. Under the doctrine of qualified immunity, public officials are shielded from individual liability in § 1983 lawsuits arising out of actions taken while performing discretionary functions. Brokaw, 235 F.3d at 1022 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Public officials will not be granted qualified immunity when "their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*.; *See also* Darryl H. v. Coler, 801 F.2d 893, 907 (7th Cir.1986). The first inquiry before the Court is whether a constitutional violation has occurred. The next consideration involves whether, at the time of the violation, the public official's conduct violated a constitutional right that "was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue." Brokaw, 235 F.3d at 1022 ("[B]inding precedent is not necessary to clearly establish a right.") (Citation omitted).

Even assuming, *arguendo*, that Poehls actions somehow violated Plaintiff's constitutional rights, Poehls is entitled to qualified immunity. Under the totality of the circumstances, the Court cannot conclude that Poehls' conduct was so plainly egregious that Poehls knew or should have known that he was violating Taylor-Doyle's constitutional rights. As will be discussed below, Poehls, an administrator at Richwoods High School at the time, was a mandated reporter of suspected child abuse claims. A reasonable person would not have known, or even suspected,

Doyle presents no factual basis upon which a reasonable fact finder could conclude that Poehls' initial suspicions were not reasonable and based on definite, articulable evidence. Therefore, summary judgment on Plaintiff's Fourteenth Amendment claim is granted in favor of the Defendant.

**IV. Qualified Immunity for § 1983 Claims**

Poehls also moves for summary judgment on the issue of qualified immunity for Plaintiff's § 1983 claims. Under the doctrine of qualified immunity, public officials are shielded from individual liability in § 1983 lawsuits arising out of actions taken while performing discretionary functions. Brokaw, 235 F.3d at 1022 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Public officials will not be granted qualified immunity when "their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*.; *See also* Darryl H. v. Coler, 801 F.2d 893, 907 (7th Cir.1986). The first inquiry before the Court is whether a constitutional violation has occurred. The next consideration involves whether, at the time of the violation, the public official's conduct violated a constitutional right that "was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue." Brokaw, 235 F.3d at 1022 ("[B]inding precedent is not necessary to clearly establish a right.") (Citation omitted).

Even assuming, *arguendo*, that Poehls actions somehow violated Plaintiff's constitutional rights, Poehls is entitled to qualified immunity. Under the totality of the circumstances, the Court cannot conclude that Poehls' conduct was so plainly egregious that Poehls knew or should have known that he was violating Taylor-Doyle's constitutional rights. As will be discussed below, Poehls, an administrator at Richwoods High School at the time, was a mandated reporter of suspected child abuse claims. A reasonable person would not have known, or even suspected,

that following Illinois law was unconstitutional conduct. Additionally, as discussed above in the Fourteenth Amendment analysis, Poehls' suspicions were reasonably based on S.T.'s statements, the marks and bruises he observed on S.T.'s body, and the language he observed Taylor-Doyle direct toward S.T. during the meeting in his office. Poehls' actions were objectively reasonable at the time they were taken. Accordingly, Poehls is entitled to qualified immunity on this claim.

## V. State Law Claims

Taylor-Doyle also seeks relief under Illinois state law for claims of false arrest and malicious prosecution. Under the Illinois Abused and Neglected Child Reporting Act ("ANCRA"), "[s]chool personnel (including administrators and both certified and non-certified school employees)… having reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child shall immediately report or cause a report to be made to the Department [of Children and Family Services]". 325 ILCS 5/4.

Poehls, an administrator at Richwoods High School during the relevant time, was a "mandated reporter" of allegations of child abuse or neglect. As discussed above, S.T.'s detailed accusation, which she repeated three times, coupled with visible marks on her body and aggressive speech by Taylor-Doyle gave Poehls a reasonable cause to believe S.T. *may* be an abused child. Plaintiff has not submitted any evidence whatsoever that indicates that Poehls' actions were unreasonable. Thus, Poehls was required under ANCRA to immediately report S.T.'s accusation to DCFS.

Poehls' decision to comply with the ANCRA reporting requirements affords him complete immunity from liability resulting from Poehls' report to DCFS. 325 ILCS 5/9 ("any person… participating in good faith in the making of a report or referral… shall have immunity from any

12

liability, civil, criminal or that otherwise might result by reason of such actions"). Plaintiff has not given the Court any reason to believe that Poehls' actions were not in good faith. Additionally, ANCRA grants persons who are mandated reporters of cases of suspected child abuse a presumption of good faith "for the purpose of any proceedings, civil or criminal". *Id*. As a result, Poehls is entitled to immunity from Plaintiff's state law claims, all of which arise out of the events following Poehls' decision to report S.T.'s allegations to DCFS.

## VI. District 150

As the Court has determined that Poehls has not violated Plaintiff's constitutional rights and has absolute immunity from Plaintiff's state law claims, summary judgment in favor of Defendant, District 150, is also granted.

## CONCLUSION

For the foregoing reasons, Poehls' and District 150's Motion for Summary Judgment [#89] is GRANTED.

ENTERED this 2nd day of February, 2010.

s/ Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge