UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNESTRA TAYLOR-DOYLE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 07-1048 |
| ) | |
| DAVID POEHLS, et. al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter is now before the Court on Defendants David Nelson ("Nelson") and the City of Peoria's Motion for Summary Judgment. For the reasons set forth below, the Motion [#92] is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(4), as the claims arise under the Civil Rights Act of 1871, 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367.

## FACTUAL BACKGROUND

On March 2, 2006, Defendant Nelson, a Peoria Police Detective, was informed that a student at Richwoods High School, S.T., accused her mother, Annestra Taylor-Doyle ("Taylor-Doyle"), of abuse. Earlier that morning, Taylor-Doyle and S.T. met with Richwoods High School Dean David Poehls ("Poehls") to discuss the option of alternative probation for S.T., who was returning from a five-day suspension for engaging in sexual intercourse on school property. Plaintiff admits that she used profanity while speaking to S.T. during the meeting, and Poehls noticed that S.T. appeared "very upset" and had "a very shaken look about her" after Taylor-

1

Doyle departed. (Taylor-Doyle Dep at 60); (Poehls Dep. at 78: 12-18.) Poehls then asked S.T. if Taylor-Doyle abused her, and S.T. answered affirmatively, specifically stating that Taylor-Doyle hit her on the head with a shoe and dunked her head in water. After hearing S.T. repeat her statements to her high school counselor, Poehls alerted the campus police officer of S.T.'s allegations of abuse and called the Illinois Department of Children and Family Services ("DCFS") suspected abuse hotline.

Nelson was informed of S.T.'s allegations and went to Richwoods later that day to interview S.T. jointly with Steven Sizemore ("Sizemore"), an investigator with the Illinois Department of Children and Family Services ("DCFS"). During the interview, S.T. stated that Taylor-Doyle hit her on the head with a shoe, on the arm with an extension cord and on the back with either an extension cord or belt. Sizemore and Nelson both noticed a mark on S.T.'s forehead and marks on her neck and upper arm.

After interviewing S.T. at Richwoods, Nelson and Sizemore spoke with Taylor-Doyle on the evening of March 2nd at the police station. Taylor-Doyle denied physically abusing S.T. and stated that her son, Sh.T., inflicted the marks on S.T.'s body. Nelson and Sizemore also interviewed Plaintiff's husband, Gary Doyle, who stated that S.T. injured her forehead when she bumped into a kitchen cabinet. Although S.T. was interviewed earlier that day at her school, the Doyles brought her to the police station that evening, where she recanted the statements she made earlier. S.T. told Nelson that her brother, Sh.T., caused the marks on her neck and that she hit her head on the corner of a cabinet door; however, both Nelson and Sizemore questioned the credibility of S.T.'s recantation.

Over the course of the ensuing investigation, Sizemore and Nelson interviewed numerous members of S.T.'s family as well as one of her high school friends. S.T.'s younger sisters, all of

2

whom resided at home at the time of the interview, stated that S.T. received the mark on her forehead from a kitchen cabinet, while one sibling stated that the mark on S.T.'s neck was the result of roughhousing with her brother Sh.T. Conversely, Sh.T, who was confined to a juvenile detention center on February 24, 2006, corroborated S.T.'s initial accusations, giving detailed accounts of the events which occurred at home in the days before his incarceration. Sh.T. specifically stated that he observed Taylor-Doyle strike S.T. in the face with a shoe, hit her with a jar of applesauce, slap her in the face, and forcibly dunk S.T.'s head in dishwater. Sh.T. also denied causing any marks on Sh.T. and stated that Taylor-Doyle threatens the children so that they will lie on her behalf. Finally, Nelson completed his investigation with interviews of M.C., a friend of S.T.'s, Dean Poehls, and Taylor-Doyle's sister, Rissa Taylor. Nelson made a probable cause determination and arrested Taylor-Doyle for endangerment of a child and domestic battery on March 21, 2006. The State's Attorney, however, did not file charges against Taylor-Doyle.

On March 2, 2007, Plaintiffs, Annestra Taylor-Doyle, individually, and as mother and next friend of S.T. and L.T., commenced this action against Poehls and District 150; Nelson and the City of Peoria, IL; Sizemore; Michael McCoy, Sheriff of Peoria County; Stephen Smith, Jail Superintendant of Sheriff of Peoria County; Peoria County, Illinois; and Jennifer Streitmatter, Director of Human Services for the Children's Home. Defendants McCoy, Smith, Streitmatter, and Peoria County have all been subsequently dismissed from this matter with prejudice. Also dismissed with prejudice was Plaintiff S.T. Remaining are Plaintiff's various constitutional and state law claims against Defendants Poehls and District 150, Nelson and the City of Peoria, and Sizemore. On July 17, 2009, Defendants Nelson and the City of Peoria filed the instant Motion. This matter is now fully briefed, and this Order follows.

## STANDARD OF REVIEW

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate, through portions of the record or affidavits, the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all references drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). The Court will deny summary judgment if a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

## DISCUSSION

In order to state a claim for relief under § 1983, the plaintiff must allege the deprivation of a right secured by the Constitution or laws of the United States by a person acting under color of state law. Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004) (citing

Gomez v. Toledo, 446 U.S. 635, 640 (1980)). Taylor-Doyle asserts that Defendant Nelson violated her Fourth Amendment rights by arresting her without probable cause. She has withdrawn her Fifth and Sixth Amendment claims.

Nelson argues that he is entitled to qualified immunity on Plaintiff's Fourth Amendment claim. In the context of an allegedly unlawful arrest, qualified immunity will shield a police officer from § 1983 liability if a "reasonable officer could have believed that their actions were lawful, in light of clearly established law and the information the arresting officer possessed." Anderson v. Creighton, 483 U.S. 635, 641 (1987). The qualified immunity inquiry is a two-step analysis addressing (1) whether a constitutional violation has occurred and (2) whether the right was "clearly established" at the time of the violation. Pearson v. Callahan, 129 S.Ct. 808, 815-16 (2009). Courts may exercise discretion when determining which of the two prongs should be addressed first based on the circumstances of each particular case. *Id* at 818. In light of circumstances of this case, the Court will first address whether Plaintiff's constitutional rights were violated.

I. **Fourth Amendment**

Taylor-Doyle claims that her arrest violated her Fourth Amendment right to be free from unreasonable seizures. The merits of Plaintiff's claim rest entirely on whether Nelson had probable cause to arrest Plaintiff because "[a] finding of probable cause absolutely bars a claim for false arrest under § 1983." Reynolds v. Jamison, 488 F.3d 756, 765 (7th Cir. 2007). A police officer has probable cause to arrest if, at the time of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense". Beck v. State of Ohio, 379 U.S. 89, 91 (1964). The Court is not

5

investigating whether the evidence was "sufficient to support a conviction" nor whether the evidence demonstrated that it was "more likely than not that the suspect committed a crime". U.S. v. Sawyer, 224 F.3d 675, 679 (7th Cir. 2000) (citation omitted). Instead, the Court's inquiry is whether "the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part." *Id*. Courts must evaluate probable cause "not on the facts as an omniscient observer would perceive them, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer-seeing what he saw, hearing what he heard". Kelley v. Myler, 149 F.3d 641, 646 (7th Cir. 1998); *See also* Wheeler v. Lawson 539 F.3d 629, 634 (7th Cir. 2008).

A reasonable person in Nelson's position would have determined, based on the totality of the information presented to Nelson at the time of Taylor-Doyle's arrest, that there was a "probability or substantial chance" that Taylor-Doyle engaged in criminal activity. To begin, the statements of a "single, credible victim or eyewitness" may be sufficient to establish probable cause. Woods v. City of Chicago, 234 F.3d 979, 996 (7th Cir. 2000); Gramenos v. Jewel Cos., Inc., 797 F.2d 432, 439 (7th Cir. 1986) (an officer has probable cause if he has "received information from some person-normally the putative victim or eyewitness-who it seems reasonable to believe is telling the truth"). Over the course of three interviews occurring the morning of March 2, 2006, S.T. told four people that her mother abused her. In her interview with Dean Poehls, S.T. stated that her mother hit her in the head with a shoe and forcibly dunked her head in water. She repeated the same accusation while speaking with her counselor, Debbie Kelone. Finally, during the interview with Detective Nelson and Investigator Sizemore, S.T. stated that Taylor-Doyle hit her in the head with a shoe and also hit her with an extension cord. At the time of her statements, Poehls, Nelson, and Sizemore all observed marks on S.T.'s body,

specifically her neck, forehead and upper arm, locations which correspond to the incidents of abuse she detailed. Additionally, the school nurse informed Nelson of a large mark on S.T.'s back. Nelson believed that the marks corroborated S.T.'s story; however, Nelson did not arrest Plaintiff based on S.T.'s statements alone. He instead conducted a comprehensive investigation comprised of interviews with eleven people over eight days.

During these subsequent interviews, Nelson also received what he determined to be credible statements from an eye-witness: Taylor-Doyle's son, Sh.T. Over the course of two interviews, Sh.T. told Nelson that he personally observed incidents of abuse in the home before he was sent to a juvenile detention center on February 24, 2006. Sh.T. specifically stated that he witnessed Taylor-Doyle hit S.T. in the head with a shoe and dunked her head in water a week before he was sent to the detention center. Sh.T. also relayed other specific instances of abuse both he and S.T. suffered at the hands of Taylor-Doyle. Finally, Sh.T. told Nelson that Taylor-Doyle threatened her children so that they would lie and cover up the incidents. Whether these statements are true, as proof that Taylor-Doyle actually abused her children or that she actually told her child to lie about the incidents, is immaterial to this analysis. Instead, Sh.T.'s statements during his interviews with Nelson shed light on the circumstances underlying Nelson's evaluation of the statements given to him by children who remained in contact with Taylor-Doyle. Nelson found Sh.T. to be credible because Sh.T. was confined to a juvenile detention center prior to S.T.'s March 2nd accusation and was thus acting independent of his family's influence. (Nelson Dep. 170: 12-22). A reasonable person in Nelson's position would lend credibility to the corroborating statements of an independent source.

Additionally, Plaintiff argues that S.T.'s recantation of her original statements during an interview with Nelson and Sizemore on the evening of March 2, 2006 negates her credibility.

After previously stating that Plaintiff hit her in the head with a shoe and forcibly dunked her head in water to four people (Poehls, Nelson, Sizemore, and Kelone), S.T. told Nelson at the police station that she hit her head on a cabinet and that her brother caused the marks on her neck. Taylor-Doyle also argues emphatically that S.T. and Sh.T. were not credible and that "[S.T.]'s recantation must be accepted as true and her accusation accepted as untrue". (Pl's. Resp. 21). However, Plaintiff's persistent focus on her innocence is unavailing and irrelevant to the probable cause issue. The lawfulness of Plaintiff's arrest is determined through an examination of "what the officer knew, not whether he knew the *truth* or whether he *should have known more*" Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 439 (7th Cir. 1986) [emphasis added]. A reasonable person in Nelson's position would justifiably S.T.'s recantation in light of the circumstances, specifically that, (1) S.T. repeated consistent statements to multiple people before having contact with the accused; (2) Nelson observed marks on S.T.'s body in the places where she stated she was abused; (3) after spending time at home, and having contact with Taylor-Doyle, S.T. recanted her statements; and (4) Sh.T., who, according to Nelson's information, had no contact with S.T. or Taylor-Doyle after he was taken into custody on February 24th, independently corroborated S.T.'s initial statements.

Additionally, the circumstances surrounding S.T.'s appearance at the police station with her parents on the evening of March 2nd would have caused a reasonable officer in Nelson's position to be suspicious of the voluntariness of S.T.'s recantation. Nelson and Sizemore spoke with S.T. alone earlier that day and originally arranged to interview only Taylor-Doyle and her husband in the evening. However, they arrived at the police station with S.T. for an unrequested second interview during which S.T. amended her story to bring it in line with her family's account. Taking into account the fact that Nelson has encountered false accusations and

8

recantations during his career (Nelson Dep. at 148), a reasonable investigating officer would still view this abrupt change with suspicion considering the totality of the circumstances detailed above.

Finally, Nelson was told by Gary Doyle, Rissa Taylor, and four of Plaintiff's children that Taylor-Doyle did not abuse S.T. Although Nelson was justifiably suspicious of the statements given by the children in light of Sh.T.'s statements, even when these facts are construed in a light favorable to Plaintiff, the fact that Nelson was presented with multiple people contradicting S.T.'s accusations does not negate the "probability or substantial chance" that Plaintiff abused S.T. To be clear, Nelson was not responsible for establishing Plaintiff's guilt, and he was not required to resolve conflicting testimony prior to arrest. Beauchamp v. City of Noblesville, 320 F.3d 733, 745 (7th Cir. 2003). A reasonable officer evaluating the totality of the circumstances (S.T.'s initial repetition of consistent accusations, her brother's independent corroboration of the initial statements, the marks on her body, and the circumstances surrounding her recantation), notwithstanding concurrent, conflicting statements, would have a reasonable basis for perceiving that there was a *probability* that Plaintiff engaged in an illegal act.

In sum, the facts, as they were presented to Nelson, would have led a reasonable officer to believe that there was a probability of criminal activity by Plaintiff. "In cases involving the issue of whether probable cause existed to support an arrest, the case should not be permitted to go to trial if there is *any* reasonable basis to conclude that probable cause existed." Thompson v. Wagner 319 F.3d 931, 935 (7th Cir. 2003) (quoting McDonnell v. Cournia, 990 F.2d 963, 968 (7th Cir. 1993)) (emphasis in original). Nelson possessed a reasonable basis to conclude that probable cause existed, and no reasonable jury could conclude by a preponderance of the evidence that Officer Nelson lacked probable cause to arrest Taylor-Doyle.

9

## II. Clearly Established Right

Nelson also prevails on the second prong of the qualified immunity analysis. Plaintiffs bear the burden of proving that the constitutional right at issue was clearly established at the time of the defendant's actions. Purtell v. Mason, 527 F.3d 615, 621 (7th Cir. 2008). Plaintiffs may meet this burden by providing the court with "a clearly analogous case establishing a right to be free from the specific conduct at issue" or by showing that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." Gonzalez v. City of Elgin, 578 F.3d 526, 540 (7th Cir. 2009) (quoting Smith v. City of Chicago, 242 F.3d 737, 742 (7th Cir. 2001)). As discussed above, there was a reasonable basis for Nelson to conclude that probable cause existed. In light of S.T.'s accusations, the marks on her body, and Sh.T.'s statements alone, a reasonable officer would not have known that arresting Taylor-Doyle was a constitutional violation. "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson v. Callahan, 129 S.Ct. 808, 823 (2009). The record reveals that Nelson was unquestionably reasonable in his belief that his conduct complied with the requirements of the law. Thus, Nelson is entitled to qualified immunity, and summary judgment in favor of the Defendant is granted on Plaintiff's Fourth Amendment claim.

## III. State Law

Under Illinois law, a plaintiff seeking relief on a claim of malicious prosecution must establish five elements: (1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for the proceeding; (4) malice; and (5) damages. All

of these elements must be present; the absence of even one element will preclude recovery for malicious prosecution. Logan v. Caterpillar, Inc., 246 F.3d 912, 922 (7th Cir. 2001). As the Court has already determined that no issue of material fact exists on the probable cause issue, Plaintiff is unable to maintain the malicious prosecution claim against the Defendant. The Court also notes the utter lack of evidence to support the notion that Nelson bore any malice, but the Court will not belabor this issue, as this Order has fully exhausted the indisputable presence of probable cause. Summary judgment in favor of the Defendant is therefore granted.

### IV. City Of Peoria

Taylor-Doyle's claims against the City of Peoria are solely based on the theory of *respondeat superior*. However, a local government is not liable under § 1983 for injuries "inflicted solely by its employees or agents." Monell v. Dep. of Social Services of City of New York, 436 U.S. 658, 694 (1978). Additionally, the City of Peoria cannot be held liable for Plaintiff's state law claim via respondeat superior because Nelson, its employee, bears no liability for his actions. Summary judgment in favor of the City of Peoria is therefore granted, as no viable claims against the city remain.

### CONCLUSION

For the foregoing reasons, Nelson and the City of Peoria's Motion for Summary Judgment. [#92] is GRANTED.

ENTERED this 8th day of February, 2010.

s/ Michael M. Mihm  
Michael M. Mihm  
United States District Judge